IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BANK OZK, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| AMAC LLC d/b/a SWEETWATERS | § | CIVIL ACTION NO. 4:23-CV-00222- |
| COFFEE & TEA, AKINYELE | § | ALM-AGD |
| MACAULAY, ADEJUMOKE ADESUYI- | § | |
| MACAULAY, and AKINSMAC, INC., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the court is Plaintiff Bank OZK's Motion for Default Judgment Against Defendants AMAC, LLC d/b/a Sweetwaters Coffee & Tea, Akinyele Macaulay, Adejumoke Adesuyi-Macaulay, and Akinsmac, Inc. (collectively "Defendants") (Dkt. #14). After reviewing the Motion for Default Judgment and all other relevant filings, the court recommends Plaintiff's Motion for Default Judgment (Dkt. #14) should be **GRANTED** as set forth herein.

**RELEVANT PROCEDURAL HISTORY**

On March 20, 2023, Plaintiff filed its Complaint against Defendants (Dkt. #1). Plaintiff filed proof of service as to each Defendant (Dkt. #9–Dkt. #12). On June 28, 2023, having received no response from the Defendants, Plaintiff filed its Request for Clerk's Entry of Default Against Defendants (Dkt. #13) and Defendant's Motion for Default Judgment against all Defendants (Dkt. #14). The Deputy Clerk entered Defendants' default on June 30, 2023 (Dkt. #15). To date, not one of the Defendants has made an appearance in this action, answered, or otherwise filed a responsive pleading.

## BACKGROUND

According to Plaintiff's Complaint,[1] on or about June 29, 2020, Plaintiff and Defendant AMAC, LLC d/b/a Sweetwaters Coffee & Tea ("AMAC") executed a U.S. Small Business Administration Note ("Note") in the principal amount of $406,000.00 at an interest rate of 6.000% per annum wherein Defendant AMAC was the Borrower and Plaintiff was the Lender (Dkt. #1 at ¶ 11; Dkt. #1, Exhibit 1 at p. 2).[2] In executing the Note, Defendant AMAC agreed to make monthly installment payments of $4,680.97 starting on January 29, 2021, and to pay any remaining amount due on June 29, 2030 (Dkt. #1 at ¶ 8; Dkt. #1, Exhibit 1 at pp. 2, 3). Plaintiff alleges that on or about June 29, 2020,[3] Defendant AMAC executed a U.S. Small Business Administration Security Agreement ("Security Instrument"), granting Plaintiff, its successors and assigns, a security interest in the Collateral (Dkt. #1 at ¶ 9; Dkt. #1, Exhibit 2). Plaintiff also alleges that on or about June 29, 2020, Defendant AMAC and Plaintiff executed a Loan Agreement that further set forth the terms of the loan (Dkt. #1 at ¶ 10; Dkt #1, Exhibit 3 at p. 2).[4] According to Plaintiff, on or about June 29, 2020, Defendant Adesuyi-Macaulay, Defendant Macaulay, and Defendant Akinsmac, Inc. each executed a U.S. Small Business Administration Unconditional Guaranty (the "Guaranty"), whereby they each unconditionally and absolutely agreed to the prompt payment of all funds advanced pursuant to the Note and full performance of the terms of the same (Dkt. #1 at

---

[1] The factual basis for the instant lawsuit is based on Plaintiff's Complaint (Dkt. #1)—to which Defendants have failed to respond—because "[a]fter a default judgment is entered, all well-pleaded factual allegations in the plaintiff's complaint are taken as true—except the amount of damages." *Freilich v. Green Energy Res., Inc.*, 297 F.R.D. 277, (W.D. Tex. Jan. 16, 2014) (citing *U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)).

[2] The Note was related to the purchase of equipment, fixtures, inventory, accounts, instruments, chattel paper, general intangibles, and all other business assets, referred to in Plaintiff's Complaint as "Collateral" (Dkt. #1 at ¶ 11).

[3] Plaintiff alleges the Security Instrument was executed on April 12, 2019, in the Complaint (Dkt. #1 at ¶ 9), but the Security Instrument attached as Exhibit 2 is dated June 29, 2020, the same date as the Note (Dkt. #1, Exhibit 2 at p. 2).

[4] Plaintiff alleges the Loan Agreement was executed on April 12, 2019, in the Complaint (Dkt. #1 at ¶ 10), but the Loan Agreement attached as Exhibit 3 is dated June 29, 2020, the same date as the Note (Dkt. #1, Exhibit 3 at p. 2).

¶ 11; Dkt. #1, Exhibit 4 at pp. 2–10). All of these documents—the Note, Security Instrument, Loan Agreement, and Guaranty—are collectively referred to as the "Loan" in Plaintiff's Complaint (Dkt. #1 at ¶ 12), and the court adopts the same moniker throughout this report and recommendation. Plaintiff alleges Defendant AMAC defaulted on the Loan by failing to make monthly payments as required by the Note (Dkt. #1 at ¶ 14). On July 7, 2020, Plaintiff perfected a security interest by filing a financing statement with the Texas Secretary of State (Dkt. #1 at ¶ 16; Dkt. #1, Exhibit 6). Following Defendant AMAC's default on the Note, on or about November 18, 2022, Plaintiff sent a Letter of Default to advise Defendants that Plaintiff was accelerating the entire unpaid balance on the Loan (Dkt. #1 at ¶ 15; Dkt. #1, Exhibit 5). Plaintiff alleges that on or about December 8, 2022, the Collateral was seized and sold for the sum of $55,000.00 under an Asset Transfer and Sale Agreement, and the sales price was credited to the amount due under the Loan (Dkt. #1 at ¶ 17). With the sale of the Collateral, Plaintiff alleges it is now owed the sum of $261,649.10, plus ongoing interest, as of March 20, 2023 (Dkt. #1 at ¶ 18). Plaintiff brought the present lawsuit against Defendants for breach of contract and breach of guaranty (Dkt. #1 at pp. 5–7).

Since the Defendants did not answer or otherwise appear, Plaintiff filed its Request for Clerk's Entry of Default ("Request for Default") (Dkt. #13) and Motion for Default Judgment (Dkt. #14) on June 28, 2023. The Request for Default states that Defendants are in default; Defendants Macaulay and Adesuyi-Macaulay are individuals who are not minors, incompetent persons, or in the military; Defendants AMAC and Akinsmac, Inc. are entities and therefore are not minors, incompetent persons, or in the military; and damages are able to be ascertained based on the evidence provided (Dkt. #13). Plaintiff attached the Loan documents supporting the sum certain due under the Loan (Dkt. #1, Exhibits 1–4, 7), as well as attorneys' fees and costs, pursuant

to Rule 55 of the Federal Rules of Civil Procedure (Dkt. #14, Exhibit 1). The Clerk's entry of default was entered on June 30, 2023 (Dkt. #15).

Plaintiff's Motion for Default Judgment states that Defendants Macaulay, Adesuyi-Macaulay, and Akinsmac, Inc. were each served with the Complaint on March 27, 2023, proof of which was filed on April 3, 2023 (Dkt. #14 at pp. 1–2; Dkt. #9–Dkt. #11). Plaintiff's Motion for Default Judgment also states that Defendant AMAC was served with the Complaint on May 10, 2023, proof of which was filed on May 23, 2023 (Dkt. #14 at p. 2; Dkt. #12). Plaintiff's Motion for Default Judgment requests $7,423.50 in reasonable and necessary attorneys' fees, costs, and expenses (Dkt. #14 at p. 5).

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure sets forth the conditions upon which default may be entered against a party, as well as the procedure to seek entry of a default judgment. *See* FED. R. CIV. P. 55. Securing a default judgment involves a three-step procedure: (1) the defendant's default; (2) the entry of default; and (3) the entry of default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A "default" occurs when the defendant does not plead or otherwise respond to the complaint. *Id.* An "entry of default" is the notation the clerk makes after the default is established by affidavit. *Id.* Here, because Defendants have failed to properly answer or otherwise appear (Dkt. #14 at p. 2), and Plaintiff has obtained an entry of default from the Clerk (Dkt. #15), the first two requirements for a default judgment have been met. As such, the only remaining issue for the court to determine is whether a default judgment is warranted.

Entry of default judgment is within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977); *Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *11 (N.D. Tex. Mar. 25, 2004); FED. R. CIV.

P. 55(b). "In determining whether to enter a default judgment against a defendant, Courts in the Fifth Circuit utilize a three-part analysis: 1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief if any, a plaintiff should receive." (*Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citing *Lindsey*, 161 F.3d at 893). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu Constr. Co. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing *Ohio Cent. R.R. Co. v. Cent. Tr. Co. of N.Y., 1889*, 133 U.S. 83 (1890)). On the other hand, "a defendant's default does not concede the truth of allegations of the complaint concerning damages." *Graham*, 2017 WL 2600318, at *1 (citing *Jackson v. Fie Corp.*, 302 F.3d 151, 524–25 (5th Cir.2002)). Having reviewed the record, the court finds that entry of a default judgment is warranted, as set forth herein.

## ANALYSIS

### *Default Judgment Is Procedurally Warranted*

Before granting a default judgment, "[t]he Court must first determine whether a default judgment is procedurally warranted," which involves six factors:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by good faith mistake or excusable neglect; [5] the harshness of the default judgment; and [6] whether the court would think itself obligated to set aside the default on the defendant's motion.

*Graham*, 2017 WL 2600318, at *2 (citing *Lindsey*, 161 F.3d at 893).

In weighing the six factors above, the factors weigh in favor of granting default judgment against Defendants. First, there are no issues of material fact in the present action. *See id.* ("[W]hen a defendant defaults, he admits to the plaintiff's well-pleaded allegations of fact.") (citing

REPORT AND RECOMMENDATION—Page 5

*Nishimatsu*, 515 F.2d at 1206). Second, Plaintiff has been substantially prejudiced in the present action through Defendants' failure to appear or file a responsive pleading to Plaintiff's Complaint (Dkt. #1), and Defendants have not responded to Plaintiff's Motion for Default Judgment (Dkt. #14), which was filed with the court on June 28, 2023. *See id.* (citing *Lindsey*, 161 F.3d at 893). Third, such unresponsiveness on the part of Defendants clearly establishes a default and renders default judgment an appropriate remedy. *See id.* (quoting *Holladay v. OTA Training, LLC*, 3:14-CV-0519-B, 2015 WL 5916440, at *4 (N.D. Tex. Oct. 8, 2015) (stating that when a party's failure to respond is "plainly willful, as reflected by [the party's] failure to respond either to the summons and complaint, the entry of default, or the motion for default," judgment is appropriate); *see also Am. Heritage Life Ins. Co. v. Mitchell*, No. 6:15-CV-95, 2016 WL 3883029, at *3 (E.D. Tex. May 24, 2016) (observing that a "failure to file any responsive pleading or motion mitigates the harshness of a default judgment"), *report and recommendation adopted*, No. 6:15-CV-950MHS-JDL, 2016 WL 3855257 (E.D. Tex. July 15, 2016). Fourth, nothing in the court's record shows that Defendants' failure to respond is due to a good faith mistake or excusable neglect. *See Lindsey*, 161 F.3d at 893. Fifth, the harshness of the default judgment is warranted since Plaintiff seeks damages to which they are entitled pursuant to the Loan and Chapter 38 of the Texas Civil Practice and Remedies Code (Dkt. #1 at ¶ 29). *See Holladay*, 2015 WL 5916440, at *5. And sixth, there does not appear to be any basis upon which the court would be obligated to set aside the default.

### *Sufficient Basis in the Pleadings to Enter Default Judgment*

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Liquid Capital of Am. Corp. v. Effective Bus. Sols. Inc.*, No. 3:18-CV-3102-S-BH, 2020 WL 2950412, at *4 (N.D. Tex. Mar. 30, 2020) (citing *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2

(N.D. Tex. Mar. 17, 2016)), *report and recommendation adopted*, No. 3:18-CV-3102-S-BH, 2020 WL 2926471 (N.D. Tex. June 2, 2020). "However, '[t]here must [still] be a sufficient basis in the pleadings for the judgment entered.'" *Sanchez v. Maddies Mayhem, LLC*, 2020 WL 4808604, at *4 (E.D. Tex. July 27, 2020) (citing *Nishimatsu*, 515 F.2d at 1206); *see Graham*, 2017 WL 2600318, at *1. Only well-pleaded facts, not conclusions of law, are presumed to be true. *Nishimatsu*, 515 F.2d at 1206.[5] After reviewing Plaintiff's Complaint, (Dkt. #1), Plaintiff's Request for Default (Dkt. #13), and Plaintiff's Motion for Default Judgment (Dkt. #14), and all evidence attached thereto, the court finds that Plaintiff has pleaded a sufficient basis to award default judgment on Plaintiff's causes of action.

### Breach of Contract and Guaranty

To succeed on a breach of contract claim under Texas law, a plaintiff must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499–500 (5th Cir. 2018) (quoting *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)). Plaintiff and Defendants entered a valid contract on June 29, 2020, by and through the execution of the Loan (Dkt. #1, Exhibits 1–4). Plaintiff's Motion for Default Judgment states that Plaintiff and Defendants executed various Loan documents for Plaintiff to give Defendant AMAC a Loan for $406,000.00

---

[5] In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This low threshold is less rigorous than that under Rule 12(b)(6), however; recognizing that "a defendant ordinarily must invoke Rule 12 in order to avail itself of that Rule's protections, [and] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Id.* at n.3

at 6% interest (Dkt. #1 at pp. 3–5). In return, Defendant AMAC agreed to repay, and Defendants Macaulay, Adesuyi-Macaulay, and Akinsmac, Inc. "unconditionally and absolutely guaranteed," the prompt payment of all funds advanced under the Loan (Dkt. #1 at pp. 3–5). The Note is signed by Defendant Macaulay as president of Defendant Akinsmac, Inc., Manager of Defendant AMAC (Dkt. #1, Exhibit 1 at p. 4). Defendant Macaulay signed the Guaranty, individually and as President of Defendant Akinsmac, Inc., and Defendant Adesuyi-Macaulay signed the Guaranty individually (Dkt. #1, Exhibit 4). Plaintiffs have sufficiently shown the existence of a valid contract between Plaintiff and all Defendants.

As to performance and breach, Plaintiff alleges it performed its duties under the Loan by extending funds to Defendants (Dkt. #1, Exhibits 1–4). Plaintiff further alleges Defendants defaulted under the terms of the Loan by failing "to tender full and timely payment to [Plaintiff]" (Dkt. #1 ¶ 20), and Defendants Macaulay, Adesuyi-Macaulay, and Akinsmac, Inc. defaulted by failing to "pay the amounts due under the Note in the event of a default by AMAC, LLC" (Dkt. #1 at ¶ 26). Defendants breached the contract sometime before Plaintiff sent its Notice of Default, dated November 18, 2022 (Dkt. #1, Exhibit 5). A guaranty's breach of contract is based on "proof of (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor." *Lee v. Martin Marietta Materials S.W., Ltd.*, 141 S.W.3d 719, 720 (Tex. App.—San Antonio 2004, no pet.). Plaintiff has proven the existence and ownership of guaranty contracts for Defendants Macaulay, Adesuyi-Macaulay, and Akinsmac, Inc. (Dkt. #1, Exhibit 4); the terms of the underlying Note (Dkt. #1, Exhibit 1); the conditions precedent, *i.e.*, Defendant AMAC's breach (Dkt. #1, Exhibit 5); and Defendants Macaulay, Adesuyi-Macaulay, and Akinsmac, Inc.'s failure to pay Defendant AMAC's obligation under the

Note (Dkt. #1, Exhibit 5). As of the filing of Plaintiff's Motion for Default Judgment, Defendants have failed to remit payment to Plaintiff for the amount due and owing (Dkt. #14 at ¶ 32). Accordingly, Plaintiff has established its performance and Defendants' breach of the obligations under the Loan.

Finally, Plaintiff alleges it has been harmed by Defendants' breach of the Loan, specifically alleging contract damages from Defendants in the amount of $261,649.10, plus ongoing interest as of March 20, 2023 (Dkt. #1 at ¶ 18; Dkt. #14 at 32). Plaintiff calculated the damages by adding the $261,649.10, plus ongoing interest, guaranteed under the Loan with reasonable and necessary attorneys' fees in the amount of $7,423.50, along with court costs and fees (Dkt. #14 at p. 5). Plaintiff has shown that each of the four requisite elements to establish breach of contract has been met; thus, a sufficient basis in the pleadings exists to enter a default judgment. *See Aguacates Seleccionados JBR USA, LLC v. Bucks Fresh Produce, LLC*, No. 7:19-CV-338, 2020 WL 4883898, at *5 (S.D. Tex. Aug. 20, 2020) (finding the plaintiff is entitled to a default judgment on its breach of contract claim); *Bank of N.Y. Mellon v. Century Loan Servicing, LLC*, No. 4:17-CV-00646-ALM-CAN, 2019 WL 4728335, at *6 (E.D. Tex. July 18, 2019) (concluding the plaintiff set forth a sufficient basis in its pleading for each element of a breach of contract claim), *report and recommendation adopted*, No. 4:17-CV-646, 2019 WL 4722480 (E.D. Tex. Sept. 26, 2019).

***Damages***

Because there is a sufficient basis in the pleadings for default judgment, the court must next look to the issue of damages regarding the Loan. Plaintiff has supplied the court with factual allegations supported by evidentiary documentation to show that it has suffered damages due to Defendants' breach. Specifically, Plaintiff seeks:

    a.  damages in the amount of $261,649.10 and interest in the amount of $43.01 per annum from March 20, 2023, until the date of the final judgment;

b.  post-judgment interest at [the weekly average 1-year constant maturity Treasury yield for the week of the entry of judgment];
c.  reasonable and necessary attorneys' fees in the amount of $7,423.50;
d.  costs of court;
e.  and further relief to which Plaintiff may be justly entitled.

(Dkt. #14 at pp. 5–6).[6]

### Contract Damages (Actual and Compensatory)

For unliquidated damages, "[t]estimony of the total amount due under a written instrument is legally sufficient to support an award of that amount in a default judgment proceeding." *Tex. Com. Bank v. New*, 3 S.W.3d 515, 517 (Tex. 1999). This testimony can be in the form of affidavit, which is probative evidence of damages and is not hearsay. *Sherman Acquisition II LP v. Garcia*, 229 S.W.3d 802, 811 (Tex. App.—Waco 2007, no pet.) ("[A] trial court may rely on affidavits in proving unliquidated damages in default judgments; in fact it is error to not consider the affidavits."). An affidavit from the moving party can satisfy this requirement. *See Bargainer v. Saddlebrook Apartments*, 104 S.W.3d 171, 173 (Tex. App.—Waco 2003, no pet.) (citing *Tex. Com. Bank*, 3 S.W.3d at 516) ("The pleadings and affidavits filed by [Defendant] constitute a record upon which the court may base a default judgment."); *InsureSuite, Inc. v. MJS Mktg., L.P.*, No. 03-05-00822-CV, 2006 WL 2080684, at *5 (Tex. App.—Austin July 28, 2006, no pet.) (finding affidavit from managing partner of moving party was probative evidence as to damages).

Plaintiff seeks $261,649.10, plus ongoing interest, in actual damages on the breach of contract claim (Dkt. #14 at p. 5). In support of such claim, Plaintiff submitted the signed and sworn Declaration of Mark D. Cronenwett, managing attorney for the litigation department of the law

---

[6] The Prayer in Plaintiff's Complaint included the standard request for pre-judgment interest without providing any analysis or evidence as to an entitlement to pre-judgment interest (Dkt. #1 at p. 7). Additionally, Plaintiff included no such request for pre-judgment interest in its Motion for Default Judgment (Dkt. #14). Moreover, in reviewing the Loan, the court has found no indication of, nor did Plaintiff direct the court's attention to, contractual terms for pre-judgment interest. Accordingly, the court does not address pre-judgment interest in this Report and Recommendation.

firm of Mackie Wolf Zientz & Mann, P.C. ("Plaintiff's Counsel") (Dkt. #14, Exhibit 1). Plaintiff's

Counsel stated in his declaration that he has reviewed the Loan documents between Plaintiff and

Defendants at issue in the present lawsuit and filed the same based on Defendants' breach (Dkt.

#14, Exhibit 1). Plaintiff's Counsel also testified to the factual allegations of Defendants' default

in the present lawsuit based on their failure to answer or file any other responsive pleading (Dkt.

#14, Exhibit 1). Plaintiff's Counsel included citations to the docket in support of his Declaration,

as well as a billing history for the present lawsuit (Dkt. #14, Exhibit 1). The court, therefore, finds

Plaintiffs are entitled to $261,649.10, plus ongoing interest from March 20, 2023, in actual

damages. *See Nicholson v. RaceFab, Inc.*, No. 6:17cv548, 2019 WL 642752, at *2 (E.D. Tex. Jan.

8, 2019), *report and recommendation adopted sub nom. Nicholson v. RaceFab*, 6:17-CV-548-

JDK-KNM, 2019 WL 951172 (E.D. Tex. Feb. 26, 2019) ("The well-pled facts establish Plaintiff's

claim for breach of contract and Plaintiff's entitlement to the requested actual damages.").

### *Post-Judgment Interest*

Under 28 U.S.C. § 1961(a), in diversity cases, "post-judgment interest is calculated at the

federal rate." *Can Cap. Asset Servicing, Inc. v. Whitaker Trucking, LLC*, No. 9:19-CV-00071, 2020

WL 4724320, at *4 (E.D. Tex. Feb. 10, 2020), *report and recommendation adopted*, No. 9:19-

CV-00071, 2020 WL 2110633 (E.D. Tex. May 4, 2020) (quoting *Boston Old Colony Ins. Co. v.*

*Tiner Assoc., Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (noting that federal post-judgment interest

applies even in diversity cases)). 28 U.S.C. § 1961 provides, in pertinent part, that "[i]nterest shall

be allowed on any money judgment in a civil case recovered in a district court," and that such

"interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly

average 1-year constant maturity Treasury yield, as published by the Board of Governors of the

Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C.

§ 1961(a). "Post-judgment interest is awarded as a matter of course" and "is not discretionary." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). Plaintiff is therefore entitled to an award of post-judgment interest at the rate published for the week ending prior to the date of judgment until the date paid.

Upon review of Plaintiff's Motion for Default Judgment (Dkt. #14), and other relevant filings, and the documentation submitted in support of the total award sought, the court finds plaintiff should be awarded a total of $261,649.10 in actual damages, plus ongoing interest in the amount of $43.01 per annum, and recommends Plaintiff be awarded this amount as judgment for Defendants' breach of contract as discussed herein. The court further recommends Plaintiff be awarded post-judgment interest at the prevailing federal rate.

### *Attorneys' Fees*

Plaintiff requests attorneys' fees in the amount of $6,478.50 (Dkt. #14, Exhibit 1). Plaintiff's Complaint, requests "reasonable attorney fees under the terms of the Loan and Texas Civil Practices [*sic*] and Remedies Code Section 38.001(8)" (Dkt. #1 at ¶ 29). "In diversity cases state law governs the award of attorney's fees." *Traverse, LLC v. Iowa Wireless Servs., L.L.C.*, 992 F.3d 336, 344 (5th Cir. 2021) (internal citations and quotation marks omitted). The Texas Civil Practice and Remedies Code provides that "[a] person may recover reasonable attorney's fees from an individual or organization . . . , in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001(8). "[A]n award of reasonable attorney's fees is mandatory under § 38.001 if the plaintiff recovers damages for a breach of contract claim." *Theriot v. Transamerica Life Ins. Co.*, 354 F. Supp. 3d 713, 719 (E.D. Tex. 2017). The "court has the discretion to determine the appropriate amount of attorney's fees following a successful claim under section 38.001." *Crisalli v. ARX Holding Corp.*,

177 F. App'x 417, 421 (5th Cir. 2006) (citing *Coffel v. Stryker Corp.*, 284 F.3d 625, 640–41 (5th Cir. 2002)). "Parties are free to contract for a fee-recovery standard either looser or stricter than Chapter 38's." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). "When parties include such a provision in a contract, the language of the contract controls, rather than the language of the statute." *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 60 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Intercontinental Grp. P'ship*, 295 S.W.3d at 654–56). "Attorney's fees that are recoverable as an element of damages, such as when sought under the terms of a contract, must be claimed in a pleading." *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 n.7 (5th Cir. 1996). "It is at the discretion of the court to award or deny attorneys' fees provided for by contract; however, this discretion is limited when a contractually authorized provision for attorneys' fees exists between the parties." *Miller v. Ocwen Loan Servicing, LLC*, No. 4:13-CV-749, 2015 WL 3899574, at *1 (E.D. Tex. June 23, 2015) (citing *McDonald's Corp. v. Watson*, 69 F.3d 36, 45 (5th Cir. 1995); *Cable Marine, Inc. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir. Unit B 1980)). In the present lawsuit, the Loan Agreement states:

> **Attorneys' Fees; Expenses.** Borrower [Defendants] agrees to pay upon demand all of Lender's [Plaintiff] costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. . . . Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit . . . .

(Dkt. #1, Exhibit 3 at p. 6). See *Miller*, 2015 WL 3899574, at *1; *Intercontinental Grp. P'ship*, 295 S.W.3d at 653.

The court uses the "lodestar" method to calculate reasonable attorneys' fees. *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006); *see also Ceats, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG, 2019 WL 1857888, at *2 (E.D. Tex. Apr. 25, 2019) ("The amount of attorneys' fees under Texas and federal law is determined by (1) calculating a

REPORT AND RECOMMENDATION—Page 13

lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and then (2) considering whether the lodestar amount should be adjusted upward or downward.") (internal quotation marks and alterations omitted). In calculating a lodestar fee, the number of hours reasonably expended by the attorneys is multiplied by an appropriate hourly rate in the community for such work. *See Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003). The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). After calculating the lodestar, the court has the discretion to (1) accept the lodestar figure; or (2) adjust it based on the circumstances of the case, after considering the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). However, the lodestar is presumed to be reasonable and should only be modified in exceptional cases. *See Watkins*, 7 F.3d at 457.

### *Number of Hours Expended were Reasonable and Necessary*

Upon review, the court concludes the hours expended were reasonable and necessary for prosecution of this cause. Plaintiff submitted the declaration of Mark D. Cronenwett ("Plaintiff's Counsel"), the managing attorney for the litigation department of the law firm of Mackie Wolf Zientz & Mann, P.C., who has practiced law in the State of Texas for nearly 30 years (Dkt. #14, Exhibit 1 at p. 7). Plaintiff's Counsel provided hourly billing invoices in connection with his declaration (Dkt. #1, Exhibit 1 at pp. 15–32). Plaintiff's billing history adequately reflects the dates, time involved, and the nature of the services performed. Plaintiff's Counsel describes the legal work itemized in the accompanying invoices, including, but not limited to, counsel and representation provided to Plaintiff; review and analysis of the loan documents at issues;

preparation and filing of pleadings; and enforcement of security interests in certain real property

(Dkt. #14, Exhibit 1). The invoices detail 32.5[7] total hours worked on Plaintiff's behalf, for a total

of $6,378.50 in billed and unbilled fees (Dkt. #14, Exhibit 1 at pp. 15–32). Plaintiff's Counsel

attests that "it is [his] opinion that the sum [requested is] reasonable attorneys' fees for prosecuting

[Plaintiff's] claims for the enforcement of its interest in certain real property as a result of

Defendants' default of [*sic*] under the Agreements between the parties" (Dkt. #14, Exhibit 1 at

¶ 19).[8] The reasonableness and accuracy of Plaintiff's Counsel's billing records are not disputed.

The court has independently reviewed the billing invoices for duplicative, excessive, or otherwise

improperly billed hours therein. In its review, the court only found two duplicate entries on June

1, 2023 (Dkt. #14, Exhibit 1 at pp. 30–31). The duplicate entries have been removed from the

court's calculations. *See KeyCorp v. Holland*, No. 3:16-CV-1948-D, 2017 WL 606617, at *7 (N.D.

Tex. Feb. 15, 2017) (noting, however, that courts are "not obligated *sua sponte* to sift through fee

records searching for vague entries or blocking billing. It is a common practice for courts to address

only those potentially inadequate entries brought to the court's attention").

Upon review of the billing records, the following billable hours are attributable to each

person: Mark D. Cronenwett (7.8); Lindsay Stansberry (7.7); Suzanne Suarez (2.0); Susan Taplin

(7.7); Cheyenne Haley (3.2); and Rachael Swernofsky (4.1) (Dkt. #14, Exhibit 1 at pp. 15–32).

Accordingly, having reviewed Plaintiff's Counsel's Declaration and corresponding exhibits, the

---

[7] Plaintiff's billing history adds up to 32.9 hours; however, there are two duplicate entries on June 1, 2023, reducing the total from 32.9 to 32.5 and reducing the sum by $100.00 (Dkt. #14, Exhibit 1 at p. 30–31).
[8] Typically,

> parties claiming attorney's fees must "segregate fees between claims for which they are recoverable and claims for which they are not" and are "required to show that attorney's fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees."

*Franklin D. Azar & Assocs., P.C. v. Bryant*, No. 417CV00418SDJKPJ, 2020 WL 6531938, at *9 (E.D. Tex. Oct. 2, 2020) (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006)), *report and recommendation adopted*, No. 417CV00418SDJKPJ, 2020 WL 6504305 (E.D. Tex. Nov. 5, 2020)

court finds the hours expended were reasonable and necessary to prosecute this matter and are recoverable. *See Watkins*, 7 F.3d at 457.

### *Reasonable Hourly Rate*

The court also concludes the hourly rates billed are reasonable. The "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citation omitted). "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Id.* However, "the district court is itself an expert in assessing these matters." *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976). Here, Plaintiff's Counsel's Declaration provides the follow rates for each person who billed time for this matter: Mark D. Cronenwett, senior attorney, $250.00; Lindsay Stansberry, senior attorney, $250.00; Suzanne Suarez, senior attorney, $220.00; Susan Taplin, paralegal, $110.00; Cheyenne Haley, associate attorney, $220.00; and Rachael Swernofsky, senior attorney, $125.00 (Dkt. #14, Exhibit 1 at pp. 15–32). Plaintiff's Counsel declares the rates are reasonable based on similar cases in the Eastern District of Texas (Dkt. #14 at ¶ 17). The sworn declaration also states that the fees billed are comparable to "similar litigation in the state and federal courts in Texas" (Dkt. #14, Exhibit 1 at ¶ 19). Federal district courts in Texas have found hourly rates at or above $400.00 to be reasonable in other cases. *See Moctezuma v. Islas*, No. 4:18-CV-00342-ALM-CAN, 2020 WL 3087136, at *4 (E.D. Tex. May 7, 2020) (collecting cases), *report and recommendation adopted*, No. 4:18-CV-342, 2020 WL 3078073 (E.D. Tex. June 10, 2020); *NSEW Holdings LLC v. Wells Fargo Bank, N.A.*, No. 4:15-CV-828, 2017 WL 1030313, at *8 (E.D. Tex. Mar. 17, 2017) (finding reasonable $250 and $569 per hour given the attorneys' range of

experience). As the billing rates in this lawsuit are at or below rates found to be reasonable in this District, the court finds the fees billed in the present lawsuit are reasonable.

In sum, calculating the total fees by multiplying each person's hourly rate by the number of hours billed after segregation, Plaintiff has documented \$6,378.50 in recoverable fees.[9] Accordingly, having reviewed the declaration and supporting documentation, and in consideration of the *Johnson* factors, the court finds \$6,378.50 constitutes fair and reasonable attorney's fees for this matter.

### Costs and Expenses

Rule 54 of the Federal Rules of Civil Procedure permits the collection of fees other than attorney's fees to the prevailing party. FED. R. CIV. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). Courts in the Fifth Circuit "adhere to the principle that reasonable out-of-pocket expenses that are part of the costs normally charged to a fee-paying client may be recovered as part of an attorney's fee award." *Lewallen v. City of Beaumont*, No. CIV.A. 1:05-CV-733TH, 2009 WL 2175637, at \*15 (E.D. Tex. July 20, 2009) (collecting cases). "A court 'may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so.'" *Feld Motor Sports, Inc. v. Traxxas, LP*, No. 4:14-CV-543, 2016 WL 2758183, at \*17 (E.D. Tex. May 12, 2016) (quoting *Pacheco v. Meneta*, 448 F.3d 783, 794 (5th Cir. 2006) (citation omitted)).

Here, Plaintiff seeks out-of-pocket costs that total \$945.00 (Dkt. #14, Exhibit 1 at pp. 15–32). The costs and fees invoiced by Plaintiff's Counsel do not constitute taxable costs under federal

---

[9] The court determines Plaintiffs have documented \$6,378.50 in reasonable and necessary attorneys' fees based on the following billable amounts per person: Mark Cronenwett, \$1,950.00; Lindsay Stansberry, \$1,925.00; Suzanne Suarez, \$440.00; Susan Taplin, \$847.00; Cheyenne Haley, \$704.00; and Rachael Swernofsky, \$512.50 (Dkt. #14, Exhibit 1 at pp. 15–32).

law;[10] however, the terms of the Loan Agreement entitle Plaintiff to recover legal costs and expenses (Dkt. #1, Exhibit 3 at p 6). *See In re Frazin*, No. 02-32351-BJH-13, 2017 WL 7050632, at *44 (Bankr. N.D. Tex. Dec. 22, 2017) (finding "the cost of *reasonable* computerized legal research is recoverable as attorneys' fees") (emphasis in original); *Lewallen*, 2009 WL 2175637, at *10, *16–17 (permitting in the fee-shifting context award of fees covering private process servers, mailing expenses, and attorney costs for travel time). Plaintiff's costs include, *inter alia*, filing fees and process server expenses (Dkt. #14, Exhibit 1 at pp. 15–32). The Court agrees that Plaintiff is entitled to $945.00 for such costs incurred as reasonable and necessary for prosecuting the breach of contract claim against Defendants as per the terms of the Loan Agreement, not 28 U.S.C. § 1920.

## CONCLUSION AND RECOMMENDATION

The court recommends Plaintiff Bank OZK's Motion for Default Judgment against Defendants AMAC, LLC, Akinyele Macaulay, Adejumoke Adesuyi-Macaulay, and Akinsmac, Inc. (Dkt. #14) be **GRANTED** as set forth herein. Default judgment should be **GRANTED** as to Plaintiff's claim for breach of contract as to all Defendants. Plaintiff should be awarded a default judgment as to its breach of contract claim against Defendants in the amount of $261,649.10 in contract damages plus interest in the amount of $43.01 per annum from March 20, 2023, until the

---

[10] Under the federal statute for recovering fees, the fees and costs permitted to be taxed as part of a judgment are:

(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of [Title 28]; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28.U.S.C. § 1828].

28 U.S.C. § 1920. Some fees are not appropriate to award as part of a default judgment, including fees for private process services, mail services, and legal research fees. *See, e.g., Bank of New York Mellon as Tr. for Certificate Holders of CWALT, Inc. v. New Century Loan Servicing, LLC*, No. 4:17-CV-00646-ALM-CAN, 2019 WL 4728335, at *13 (E.D. Tex. July 18, 2019), *report and recommendation adopted*, No. 4:17-CV-646, 2019 WL 4722480 (E.D. Tex. Sept. 26, 2019); *Feld Motor Sports, Inc.*, 2016 WL 2758183, at *20 (citing *Stoffels v. SBC Comm'ns, Inc.*, No. SA-05-CV-0233-XR, 2012 WL 2122191, at *3 (W.D. Tex. June 11, 2012)).

date of the final judgment; post-judgment interest at the prevailing federal rate; and reasonable and necessary attorneys' fees and costs of court in the amount of $7,323.50. Defendants AMAC, LLC, Akinyele Macaulay, Adejumoke Adesuyi-Macaulay, and Akinsmac, Inc. should be jointly and severally liable for the judgment awarded herein.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 12th day of March, 2024.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION—Page 19